# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CHARLOTTE GILES,                    :
                                    :
        Plaintiff,                  :
                                    :           Hon. Joseph E. Irenas
        v.                          :
                                    :    Civil Action No.12-05688-JEI-KMW
LOWER CAPE MAY REGIONAL             :
SCHOOL DISTRICT BOARD OF            :           **OPINION**
EDUCATION, THOMAS FRISOLI,          :
JACK PFIZENMAYER, and JOHN          :
DOES DECISION MAKERS (1-5),         :
                                    :
        Defendants.                 :

**APPEARANCES:**

Latonya N. Bland-Tull, Esq.
LAW OFFICES OF RICHARD L. PRESS & ASSOCIATES, LLC
23 E. Black Horse Pike
Pleasantville, NJ 80232
        Counsel for Plaintiff Charlotte Giles

William S. Donio, Esq.
COOPER LEVENSON, P.A.
1125 Atlantic Avenue, Third Floor
Atlantic City, NJ 08401
        Counsel Defendants Lower Cape May Regional School District Board of
        Education, Thomas Frisoli, and Jack Pfizenmayer

    This unlawful retaliation matter comes before the Court on Defendants Lower

Cape May Regional School District Board of Education, Thomas Frisoli, and Jack

Pfizenmayer's (collectively, "Defendants") motion for summary judgment.[1]  (Dkt. No.

15.)  Plaintiff Charlotte Giles alleges Defendants failed to promote her because she filed

---

[1] Defendants move pursuant to Fed. R. Civ. P. 56(c).  The Court has subject matter
jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

an EEOC complaint against her previous employer.  In the Complaint, Plaintiff details how several coworkers physically and sexually harassed her and management failed to properly respond.  Plaintiff brings her claims under the New Jersey Law Against Discrimination ("NJLAD"), 42 U.S.C. §§ 1983 and 1985, and Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980).[2]  For the reasons set forth below, Defendants' motion will be granted in part and denied in part.

## I.

For the purpose of this motion, the Court resolves any factual disputes in favor of Plaintiff.  See Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986) (holding that when deciding motions for summary judgment, courts must construe the facts and inferences in a light most favorable to the non-moving party.)

In 2006, Plaintiff worked as a full-time custodian at Cape May County Technical School ("CMCT") and concurrently as a substitute custodian for the Lower Cape May Regional School District ("LCM").  (DSF[3] ¶ 1.)

In 2008, Plaintiff applied and received an offer for a full-time custodial position at LCM.  (DSF ¶ 2.)  She declined the offer, however, after learning of the position's salary—an amount less than she was then making.  (DSF ¶ 2; Defs.' Ex. E.)

---

[2] Plaintiff originally alleged a violation of the NJLAD for gender discrimination.  (See Compl., Count IV)  Plaintiff has since withdrawn the allegation.

[3] DSF refers to the Statement of Facts in Defendants' Brief in Support of the Motion for Summary Judgment.  (Dkt. No. 15.)  PSF refers to the Statement of Facts in Plaintiff's Brief in Opposition to the Motion for Summary Judgment.  (Dkt. No. 18.)  PRSF refers to Plaintiff's Reply to Defendants' Statement of Facts in Plaintiff's Brief in Opposition to the Motion for Summary Judgment.  (Dkt. No. 18.)

Consequently, Plaintiff continued to work both full-time at CMCT and part-time at LCM.

In March 2010, Plaintiff filed a Charge of Discrimination against CMCT with the Equal Employment Opportunity Commission ("EEOC"). (PSF ¶ 11.) The EEOC complaint details a number of unlawful events that allegedly occurred during Plaintiff's employment with CMCT:

- Plaintiff was assaulted by an employee in May 2007, resulting in injuries to her right elbow, forearm, bicep, and shoulder. (Pl.'s Ex. G.)

- Later that month, Plaintiff was told that the incident was "horse play" and that she did not qualify for Workers' Compensation. (Pl.'s Ex. G.)

- In 2008, Plaintiff was stalked by a coworker; upon reporting the stalking incident to the CMCT administration, Dr. Hudanich, the Affirmative Action Officer, claimed to have taken care of the problem but failed to follow through. (Pl.'s Ex. G.)

- Shortly after the stalking incident, a coworker grabbed Plaintiff's breasts and pushed his private parts into her backside. (Pl.'s Ex. G.)

- The same coworker also told Plaintiff he "could bend [her] over and rape [her] . . . ." (Pl.'s Ex. G.)

- When Plaintiff reported the incidents to Dr. Hudanich, she told Plaintiff she should feel blessed to have been raped nineteen years ago and refused to take "effective and prompt action" against Plaintiff's harasser. Instead of requiring her harasser to relocate, Plaintiff was told to relocate. (Pl.'s Ex. G.)

- In late 2008, Plaintiff complained about the lack of effective action taken in response to her allegations of sexual harassment. As a result, she was subjected to unwarranted disciplinary actions. (Pl.'s Ex. G.)

(PSF ¶ 11.)

In July 2010, CMCT terminated Plaintiff's employment. (DSF ¶ 3; Defs.' Ex. A (Giles Tr.) at 30:8-10.)

3

In 2011, while still employed part-time with LCM, Plaintiff's supervisor, Martin Biersbach ("Biersbach"), recommended her for a full-time position with LCM. (DSF ¶ 6.) Biersbach told Jack Pfizenmayer ("Pfizenmayer"), the Superintendent at LCM, that Plaintiff was his top recommendation. (DSF ¶ 7; Pl.'s Ex. F (Biersbach Tr.) at 24:3-6.) Pfizenmayer instructed Frank Onorato ("Onorato"), the Business Administrator at LCM, to check Plaintiff's references. (DSF ¶¶ 7, 8.) When Onorato called CMCT's Business Administrator, however, the Administrator would not comment on Plaintiff. (DSF ¶ 9; Defs.' Ex. B (Pfizenmayer Cert.) ¶ 3.) Onorato told Pfizenmayer about the conversation. (Defs.' Ex. B (Pfizenmayer Cert.) ¶ 3.)

After Onorato informed Pfizenmayer of the conversation, Pfizenmayer subsequently called CMCT's Superintendent, who refused to tell him the reason for Plaintiff's July 2010 termination. (Defs.' Ex. B (Pfizenmayer Cert.) ¶ 4.)

LCM consequently determined that Plaintiff would not be recommended to the Board of Education for the position. (DSF ¶ 6.) Tom Frisoli ("Frisoli"), the Director of Building and Grounds, told Plaintiff so in a meeting. (Pl.'s Ex. B (Frisoli Tr.) at 82:25-83:19; Defs.' Ex. A (Giles Tr.) at 142:21-25.)

Frisoli also told Plaintiff that she would never obtain full-time employment with LCM or anywhere in Cape May County, and she would be a "liability" to the district because of her pending EEOC complaint.[4] (DSF ¶ 7; Defs.' Ex. A (Giles Tr.) at 118:18-25, 141:11-142:20.) Frisoli was informed of the EEOC complaint by Onorato, who learned of

---

[4] Frisoli claims he did not tell Plaintiff that she would never obtain full-time employment in LCM or in Cape May County. (Pl.'s Ex. B (Frisoli Tr.) at 84:25-85:7.)

its existence from Pfizenmayer.  (Pl.'s Ex. B (Frisoli Tr.) at 84:7-24.)  It is unknown how Pfizenmayer became aware of the EEOC complaint.[5]

In October or November 2012, Plaintiff's coworker, Corey Breslin, also informed Plaintiff that Frisoli told him that Plaintiff was a liability and would never obtain full-time employment with LCM.  (Defs.' Ex. A (Giles Tr.) at 143:9-144:5.)

Ultimately, Plaintiff was not hired for the full-time position with LCM.  (DSF ¶ 4.)

Because of Defendants allegedly unlawful conduct, Plaintiff claims to have suffered a loss of income, monetary damages, and depression.  (Defs.' Ex. A (Giles Tr.) at 152:4-24.)

Plaintiff filed the instant complaint in August 2012 seeking a favorable judgment; monetary damages, including punitive damages, compensatory damages, and wage loss; and equitable relief in the form of a full-time position with LCM, among other requests. Plaintiff also filed a complaint with the EEOC against LCM based on the same allegations in this case which is currently pending.  (Compl. ¶ 19; Defs.' Ex. A (Giles Tr.) at 115:13-117:1.)

## II.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the

---

[5] Pfizenmayer states that "[he] did not know [Plaintiff] had filed an EEOC complaint against [CMCT] and that fact could not have, and did not have, an impact on [his] recommendation to the Board or its ultimate decision."  (Defs.' Ex. B (Pfizenmayer Cert.) ¶ 8.)

court must construe all facts and inferences in the light most favorable to the nonmoving party. <u>See</u> <u>Boyle v. Cnty. of Allegheny</u>, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249-50 (citations omitted). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter. <u>Id.</u> at 249.

## III.

Plaintiff's Complaint sets forth three causes of action: (A) unlawful retaliation under NJLAD; (B) a First Amendment violation under 42 U.S.C. § 1983;[6] and (C) unlawful discharge under <u>Pierce</u>. Each claim is addressed in turn.

---

[6] In Count I of the Complaint, Plaintiff also brings a claim for violation of 42 U.S.C. § 1985, which Plaintiff does not defend in her opposition brief. Fed. R. Civ. P. 56(e) states that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." <u>See also</u> <u>Duran v. Merline</u>, 923 F. Supp. 2d 702, 723 (D.N.J. 2013) ("Plaintiff has apparently abandoned [his] claim . . . since his opposition papers do not proffer any facts or evidence to support it."); <u>Damiano v. Sony Music Entm't, Inc.</u>, 975 F.

## A.

Plaintiff alleges Defendants retaliated against her by failing to promote her in violation of the NJLAD.[7]  Her claim is analyzed under the ever-present burden shifting framework first articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).[8] <u>Joseph v. N.J. Transit Rail Operations, Inc.</u>, Civ. No. 12-1600, 2013 WL 5676690, at *9 (D.N.J. Oct. 17, 2013).

Defendants move for summary judgment on two grounds: (i) Plaintiff fails to "demonstrate a causal connection" between the filing of her EEOC complaint and LCM's

---

Supp. 623, 637 (D.N.J. 1997) (claims were "expressly abandoned by plaintiff when he failed to address them in response to defendants' motion for summary judgment."). Accordingly, summary judgment will be granted on Plaintiff's § 1985 claim.

[7] Where a plaintiff alleges retaliation in violation of the NJLAD, as an initial matter, "the plaintiff bears the burden of proving that his or her original complaint—the one that allegedly triggered his or her employer's retaliation—was made reasonably and in good faith."  <u>Carmona v. Resorts Int'l Hotel, Inc.</u>, 189 N.J. 354, 373 (2007).  There is no indication, and Defendants do not argue, that Plaintiff's EEOC complaint is frivolous or was made in bad faith.  Accordingly, this threshold has been met.

[8] "[I]n a failure-to-promote context involving a claim of retaliation, a claimant establishes a *prima facie* case by proving by the preponderance of the evidence that (1) the claimant engaged in a protected activity that was known to the alleged retaliator, (2) the promotion sought was denied, and (3) the claimant's engagement in the protected activity was a cause of the promotion denial."  <u>Jamison v. Rockaway Twp. Bd. of Educ.</u>, 242 N.J. Super. 436, 447 (App. Div. 1990).
   "Once the claimant makes a *prima facie* showing, the burden of going forward, but not the burden of persuasion, shifts to the employer to articulate some legitimate non-retaliatory reason for the adverse action."  <u>Id.</u> at 445 (citing <u>Wrighten v. Metro. Hosps., Inc.</u>, 726 F.2d 3146, 1354 (9th Cir. 1984)).
   "If the employer articulates such a reason, the claimant-employee is afforded a fair opportunity to show by preponderating evidence that a discriminatory intent motivated the employer's action."  <u>Id.</u>
   "When plaintiff succeeds in that burden, a presumption is created that the adverse employment action was the product of improper retaliatory intent."  <u>Id.</u> at 445-46.  Then, "the employer's proofs must focus on the qualifications of the other candidates.  The employer must prove by a preponderance of the evidence that the adverse action would have taken place regardless of the retaliatory motives of the employer."  <u>Id.</u> at 447

decision not to promote, (Br. at 9), thereby precluding Plaintiff from setting forth a
*prima facie* case; and (ii) Plaintiff fails to rebut Defendants' nondiscriminatory
justification for refraining to promote—that Pfizenmayer "drew a negative inference"
when his requests for references went unfulfilled and simply "elected not to hire her."
(Reply at 7.)

   The Court finds Defendants' arguments unconvincing. The same set of alleged
facts—supported by record evidence—illustrate that genuine issues of material facts
exist.

   According to Plaintiff, there was no reason for her not to have been hired besides
the EEOC complaint. Pfizenmayer had already received a recommendation from
Biersbach in which he named Plaintiff his top recommendation. (Pl.'s Ex. F (Biersbach
Tr.) at 24:3-6.) Further, Plaintiff was "an excellent worker," she did her job "in a very
good manner," and she was "dependable and conscientious." (Pl.'s Ex. B (Frisoli Tr.) at
29:2-7.) Plaintiff also possessed a Black Seal Boiler's License and had the most seniority
of all the recommended candidates. (Pl.'s Ex. I; Pl.'s Ex. K.) Perhaps most importantly,
Plaintiff had already been offered a full-time position with LCM, thereby illustrating her
qualifications were more than sufficient. (PSF ¶ 5.)

   Further, Plaintiff propounds evidence that Pfizenmayer knew of the EEOC
complaint. According to Plaintiff, Frisoli was informed of the EEOC complaint by
Onorato, who was made aware of the EEOC complaint by Pfizenmayer. (Pl.'s Ex. B
(Frisoli Tr.) at 84:7-24.) It follows that—to have informed Onorato of the EEOC
complaint—Pfizenmayer must have been aware of the EEOC complaint himself.

   According to Defendants, however, Pfizenmayer was unaware of the EEOC
complaint. Pfizenmayer states that "[he] did not know [Plaintiff] had filed an EEOC

8

complaint against [CMCT] and that fact could not have, and did not have, an impact on [his] recommendation to the Board or its ultimate decision.  (Defs.' Ex. B (Pfizenmayer Cert.) ¶ 8.)

This disagreement constitutes a genuine issue of material fact.  Accordingly, Plaintiff's NJLAD claim withstands summary judgment.

## B.

Plaintiff also alleges that Defendants' failure to promote her violates her First Amendment right to petition.[9]  The Court holds that Plaintiff has put forward sufficient evidence by which to withstand summary judgment.

"To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action."  Campbell v. West Pittston Borough, 498 F. App'x 186, 189 (3d Cir. 2012); Young v. Kisenwether, 902 F. Supp. 2d 548, 554 (M.D. Pa. 2012).  Plaintiff's showing, at this stage, satisfies both requirements.

---

[9] Two rights guaranteed by the First Amendment are implicated here: the right to free speech and the right to petition.  U.S. Const., amend. I ("Congress shall make no law . . . abridging the freedom of speech, or of the press, or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."); Wayte v. U.S., 470 U.S. 598, 610 n.11 (1985) ("the right to free speech and the right to petition are separate rights").  Although Plaintiff appears to conflate the two, (see, e.g., Opp'n Br. at 5-6), the Court holds that her EEOC complaint is protected as a governmental petition but unprotected as a matter of public concern.  See Hill v. Borough of Kutztown, 455 F.3d 225, 242 n.24 (3d Cir. 2006) ("When a public employee's activity qualifies as 'petitioning the government'—such as filing a grievance pursuant to a collective bargaining agreement, or suing [her] employer—it is protected . . . regardless of whether the petition involved a matter of public concern.").

First, by filing her EEOC complaint, Plaintiff engaged in protected activity. Herr v. Pequea Twp., 274 F.3d 109, 115 (3d Cir.2001) ("The First Amendment right to petition extends to all departments of government . . . . The protection it affords thus applies . . . to petitioning state agencies."); Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997) ("filing [an] EEOC complaint and [an] employment discrimination suit against . . . [defendant] constituted protected activity under the First Amendment."); Massi v. City of Phila., Civ. No 12-1309, 2013 WL 1194643, at *7 (E.D. Pa. Mar. 25, 2013) (holding that defendant's assertion that the filing of an EEOC complaint does not constitute protected activity "contravenes Third Circuit case law.").

Second, as demonstrated by the Court's analysis of Plaintiff's NJLAD claim, supra, a genuine issue of material fact exists as to whether Plaintiff's protected activity was a substantial factor in LCM's decision not to promote her.

Consequently, Plaintiff has put forward sufficient evidence to withstand summary judgment.

## C.

Lastly, Plaintiff brings a claim for unlawful retaliation in violation of Pierce. Therein, the New Jersey Supreme Court held that an at will employee has a cause of action against her employer if her employment is terminated for reasons "contrary to a clear mandate of public policy."[10] Id. at 72; Feldman v. Hunterdon Radiological Assocs., 187 N.J. 228, 237 (2006) (reaffirming Pierce).

---

[10] Pierce involved a dispute between a research doctor and his employer, a pharmaceutical company ("Ortho"). Pierce, 84 N.J. at 61. Dr. Pierce objected to researching loperamide, a liquid drug used to treat pediatric and geriatric diarrhea, because of its allegedly dangerous and unnecessarily high saccharin content. Id. at 62-

Plaintiff, however, does not bring a claim for wrongful discharge.[11]  Instead, she claims LCM failed to promote her.  (Compl. ¶ 5 ("Defendant [LCM's] actions in failing to promote Plaintiff to a full time custodian position, for which she was qualified, because of her pursuit of claims with . . . [the] EEOC is in violation of Plaintiff's rights under Pierce."))

New Jersey courts, however, refuse to extend Pierce beyond the wrongful discharge context.  See Sabatino v. St. Aloysius Parish, 288 N.J. Super. 233, 240 (App. Div. 1996); Ebner v. STS Tire & Auto Ctr., 2011 WL 4020937, *7 (D.N.J. Sept. 9, 2011).

Accordingly, Defendants' motion will be granted as to Plaintiff's Pierce claim.

---

63.  Ortho demoted Dr. Pierce in response, leading Dr. Pierce to resign.  Id. at 63.  She then sued, claiming she was constructively discharged for failing to "follow a course of action and behavior which was impossible for [her] to follow because of the Hippocratic oath she had taken."  Id. at 64.  The trial court granted Ortho's motion for summary judgment, reasoning that because Dr. Pierce was an employee at will, Ortho could end her employment for any reason.  Id.  The Appellate Division reversed, holding that a plenary hearing was necessary before deciding whether to adopt an exception to the common law rule permitting an employer to fire an employee at will for any reason.  Id.  Although the Supreme Court, in its opinion, granted at will employees a cause of action, it dismissed Dr. Pierce's: the high court vacated the Appellate Division's ruling and reinstated the trial court's dismissal.  Id. at 76.

[11] To the extent Plaintiff brings a constructive discharge claim, it is dismissed by this Court.  Constructive discharge occurs when an employer's conduct "is so intolerable that a reasonable person would be forced to resign rather than continue to endure it."  Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 29 (2002).  Further, the intolerable conduct must convey "a sense of outrageous, coercive, and unconscionable" behavior.  Jones v. Aluminum Shapes, 339 N.J. Super. 412, 428 (App. Div. 2001).  There is no evidence indicating that Plaintiff, while employed by LCM, was subjected to outrageous, unconscionable behavior that would have made it intolerable for her to continue her employment.

## IV.

For the reasons stated above, Defendants' motion for summary judgment will be granted in part and denied in part.  An appropriate order shall follow.

Date: 8/1/14

_____

Hon. Joseph E. Irenas, S.U.S.D.J.